Good morning, your honors. May it please the court. My name is Catherine Pasadlo, supervised by Gowri Ramachandran on behalf of appellants. May I reserve two minutes for rebuttal, your honors? You may. You'll have to watch the clock yourself. We're aggressive. Absolutely. Your honors, what's at stake here today is allowing a sweeping policy to go unexamined when it implicates civil patients' multiple constitutional rights. Your honors, the appellants have a meritorious claim grounded in this court's precedent that regulation 4350 is punitive. Can I – I'm trying to sort out this case procedurally, and I need you to help me. Absolutely. I need to understand what your position is in the case. The district judge dismissed the case sua sponte. That's correct, your honor. But did so after there was a preliminary injunction proceeding in which both sides submitted declarations? That's correct, your honor. There was no live testimony at the – Not to my knowledge. Okay. What was that? There was no live testimony. No. Okay. Now, when the judge makes a decision to dismiss the complaint sua sponte and we review that decision, what do we look at? You look at the whole record before the court. Do we? Do we or do we look at merely the complaint? That's my question. And let me – I don't want to blindside you, so let me get to where I'm heading. Of course. I think your position has a lot of merit if we look only at the complaint. Yeah. But if we treat this as, in effect, a summary judgment proceeding and with both sides submitted affidavits, et cetera, then perhaps the judge, although under the wrong name, reached the right result. So tell me – tell me procedurally how we're supposed to look at this. Procedurally, this Court should look at it to determine whether, indeed, the appellants stated a claim. And it is our position that they did have a meritorious claim that is grounded in this Court's precedent. Question. Your – your position on a meritorious claim has to do with declarations made in the – in the preliminary injunction case, correct? No, Your Honor. In their pro se complaint – Well, where – where did that – this – the judge sua sponte dismissed this. There was no live testimony. So where are the declarations – where did the declarations come from? The declarations were in support of the preliminary injunction. That's just exactly what I was saying. And there were declarations by both sides. The preliminary injunction was denied. No appeal was taken. The – both sides agree that the injunction case is moved, but they're never – but it's still pending in the district court. There's no final determination at all on what any findings affect. So we've got a record made up of declarations where we have to pick maybe one side or the other, which is hardly the job of an appeals court. Isn't there a problem there? Your Honor, the district court entered a Rule 54b judgment, which made the – the – Speak into the microphone. The 54b judgment made this decision a final appealable decision. Well, what do you want us to do? What is it that – what relief is it that you seek today? To find that the appellant stated a claim on which relief can be granted, Your Honors, and remand this case to the district court. You've got to speak into the microphone. You're moving back and forth. And remand this case to the district court for further factual determination. So if you want us to find that a claim was made upon which relief can be granted, we would then look only at the pro se complaints? The pro se complaints, but this Court has also indicated that it is appropriate to look at other filings when those filings could indicate any deficiencies in the complaint could be cured. Well, did the judge make any such findings? The judge's only finding was that you weren't entitled to preliminary injunctive relief and that he thought the complaint didn't state a claim. Exactly. And because he felt the complaint did not state a claim, that is why it is so important, based on the very thin record that was before the district court, there was no possible way that – Well, let me try this – let me try this differently. And I may just – may work backwards. If this were a summary judgment proceeding, in which case – in which each side had been given notice that it was summary judgment and each side submitted affidavits, I would be inclined to think that your opponents would be entitled to summary judgment. I – So my – this is – you may think I'm wrong. So my question is, how were you prejudiced below? Was there – was there more evidence you wanted to put in the record? Were there – were there witnesses you wanted to hear? Did you want a live hearing? What – what was it on the merits that you wanted? Precisely, Your Honor. On the merits, the plaintiffs wanted injunctive relief by any other thing, such as moving forward with summary judgment or perhaps a trial, on the merits of this issue. And they never got the chance.   And as of this matter, the Subcommittee on De Сttaminating Substantive Parts has ever forced a title simpler than that to the plaintiffs' case and instead, a sweeping policy that bans all electronic – Speak into the microphone. When – when you move around, I don't hear, right? Sorry, Your Honor. But instead, because the record was not developed and dismissed so early in the proceedings, the appellants never got a chance to establish their plausible claim that this regulation infringes multiple fundamental rights. Okay. So now let's go back to the complaints, because if it's your position that we need to judge this case on the pleadings, identify for me – and I understand they're pro se pleadings and we have to interpret them. Yes. Identify for me which complaint made a plausible claim. Yes, Your Honor. Their 2010 amended complaints that they submitted when they were pro se were very factual. They were not merely conclusory. Would you like me to – No, no. I just – I want you – you can just tell me which of the – which of the – or all of them. Yes. Which of the – which of the Petitioner's or Appellant's complaints? So Appellant Allen and Appellant DeBerry had amended pro se complaints in 2010 that thoroughly discussed this electronic device ban and its effect on their constitutional rights. Likewise, Appellant Frazier had an emergency complaint. I believe that's the state's excerpt of the record. Wait a minute. Let's see where we're going. You have – are you claiming that there was a violation of a direct constitutional right, like the First Amendment right, for example? Are you claiming that? Yes, Your Honor, precisely. The 14th Amendment protects against – Are you claiming basically that this is a matter of finding whether these regulations were punitive? Because there's not much question that if these people were still in prison, these regulations, from all I could gather, would be valid. Your big contention is these are civil commitments, and therefore they should not be held to a punitive standard. Isn't that the gist of what you've got? Precisely, Your Honor. The 14th Amendment forbids all punishment in the civil setting. And in this case, the state has cited safety and security. But because this claim was dismissed so early in the proceedings, they never got to develop the record to determine – So that's what you want, is to go back and develop that record on that issue. Yes, they most definitely need to go back to develop this record to see if the incidents cited to support this regulation are indeed incidents that go to safety and security. This regulation bans all devices, the most innocuous things down to graphing calculators, Your Honor. And if the record is not fully developed, we cannot determine whether this regulation is banning devices that simply pose no security threats. What did you do in the district court to alert the judge to the notion that there's more that we want to say in this case? Unfortunately, Your Honor, I was not counsel. No, when I say you, I don't mean you. I mean your side of the case. No personal blame aside. Well, it is my understanding, Your Honor, that this was quite going on before the district court for a long time. And in fact, Judge Windmill ordered a triage conference, which Judge David Carter presided over, to try and facilitate settlement going to this point of electronic devices. And unfortunately, Coalinga State Hospital walked away from the table, and so we are going to have to wait. Well, but that's really not relevant to what we're doing here today. I'm trying to figure out. It's a procedurally strange case because the judge dismisses the complaint sui sponte. And my question is, did anybody say to the district judge, in effect, hey, wait a minute here, we've got more we need to say, and you haven't given us a chance, or I'm not sure you're required to. I'm just trying to find that in the record. I think that today we are here to request this court to do just that. Before today. Before today, to my knowledge, yes, the plaintiffs in the consolidated case below actually asked the district court judge to reconsider his ruling on their preliminary injunctive relief. And that's what I was getting at. When they asked for reconsideration, what did they say? They pointed to more facts to further support their claims. But since they were pro se, unfortunately, that didn't get developed to the extent possible. But several of the things they pointed out over and over again is that this policy is so incredibly sweeping that it is restricting them in ways that not even prisoners are restricted or other similarly situated civil detainees. For instance, Your Honors, Napa State Hospital, also subject to this regulation, allows for devices that are banned by this regulation. And the California prison system even allows certain prisoners to have devices that have been denied to our clients. And it shows how sweeping this regulation is based on so little. Moreover, we do not know, because we have not gone through the discovery process, whether indeed the incidents are germane to this sweeping regulation. When we look at this, when we review, what, in your view, do we look at? The district court dismissed on the pleadings. Do we look at the pleadings or do we look beyond the pleadings? You should look at the pleadings. But because they were pro se, if there's anything else in the record that indicates that they could somehow cure the deficiencies of their pro se pleadings, they should be allowed to at least amend their original pro se complaints. Because this case was dismissed with prejudice. And if there's something that would allow them to cure it, then they should be able to. Otherwise, this sweeping ban will not go forward. And they will not be able to determine whether it very realistically is so excessive that it is violating multiple constitutional rights, Your Honors. You wanted the same subtype for rebuttal. Do you want to do that now? Yes, Your Honors. Thank you very much. Good morning, Your Honors. May it please the Court.  issue a screening order for Julie Wanguteris, Senior Assistant Attorney General, on behalf of the California Department of State Hospitals, Colina State Hospital and its employees. Your Honors, Congress mandates that the lower court issue screening orders at any time to eliminate causes of action that fail to stay in claim. So what do we look at in this case? Same question I asked the other side. That's right. We're only reviewing the sufficiency of the complaints, are we not? That's correct. Why don't these complaints, at least not perfectly, raise the issue of whether or not the extent of the policy was such that it moved from security to punitive? As I understand, and believe me, I'm the world's least technologically adept person, but as I understand it, two people playing a game with Game Boys probably can't communicate beyond the reach of their arms. Why does the policy need to ban everything electronic? Let me begin by saying I am going to be addressing the procedural aspects, and my colleague, Jesse Rivera, will be addressing the constitutional challenges. But there are two things that this Court is – has to be focused on. Number one is the failure to stay in claim on the basis of the complaint. Okay. But that's what I'm asking. I've read these complaints, and they seem to raise the issue that Judge Bright talked about, which is whether or not the policies adopted – these are not prisoners. They're – They're civil detainees. Civil detainees. I was trying to think of the right word. So for civil detainees, what the Supreme Court tells us is that regulations may not be punitive. They must have some security purpose or some purpose related to their – the reason for their detention. And here they say, in an electronic age, you've gone so far as to be punitive. They may be wrong. They may be wrong, but the face of the complaint to me, fairly read, says that. Why am I wrong in reading it that way? The face of the complaint. First of all, there's a fundamental right at issue here. We are talking about an amenity. We are talking about having a laptop computer or a – Well, no, what we're talking about are people who have not been convicted of a crime or not being – not being detained because they're convicted of a crime, detained because of their dangerous predilections, who the Supreme Court says you can do that, but you can't – you can't have punitive purposes. Your – whatever restrictions you place on them must either be related to the reason we're keeping them or for security. And these people say, this regulation isn't related to neither. They may be dead wrong on the merits, but why isn't that enough to state a claim? What the plaintiffs actually say in their complaint is that they acknowledge the existence of this computer policy exists for the very purpose of safety and security in the institutions. Well, they say that's what they're told, but don't they say it goes too far? Isn't that – I mean, these are, quote, say, complaints, but isn't that a fair reading of them? What they actually say, Your Honors, is that a certain group of patients began to abuse their right to own and possess laptop computers by violating state and federal laws. They say, for example, they specifically cite the fact that these civil detainees had child pornography and adult pornography. And in applying the Youngberg v. Romero standard, this Court needs to give deference to the professional judgment of the state hospital employees in developing this directive and applying it for the safety and security of the institution. Well, I'm – you know, we can go back and look at these complaints later, but respond to the argument that the regulation, while perhaps constitutional in part, goes too far, that it bans all electronic devices, and some of those can't be used for the purposes of – that the institution's worried about. And I understand, you know, you decided to split up the argument. I mean, so if you want your co-counsel to get up now, that's fine. But that's the danger of splitting the argument. Yes, I understand. Let me address the regulation, Section 4350. And I'd like to focus the Court's attention to the language that narrows the application of this ban to only accessing communications network. It reads, electronic devices with the capability to connect to a wired – and then he gives some examples – and or a wireless – again, more examples – communications network. So the example that the appellants use in their brief about a remote control, that has no capability of connecting to a network communication. So it's – they are reading too broadly the application of the regulation. One question. Well, you've read us the final ruling on 4350, as I understand it. Am I right? I'm sorry? Wasn't there a preliminary ruling on that prior to the final ruling, which was attacked? And now it's the final ruling, and that was never before. The final ruling, if I understand it, was never really pleaded or in any way before the district court. It was a tentative ruling. Are you talking about the screening order, Your Honor, or the regulation itself? I'm talking about the regulation itself. Okay, there was – The pleading – I don't know what – the pleading referred to the preliminary ruling and not the final 4350. Am I right or am I wrong? I believe that the screening order from the lower court actually did refer to the regulation itself, Your Honor, and not the administrative directive 654, which is, I think – Was that – a matter was decided on the pleadings that that did not violate any constitutional right of the plaintiffs? Yes. So that's in the pleadings? The 40 regulation – the challenge to Title IX California Code of Regulations section 4350. And that was in the pleadings? Yes. And you don't have to go to any evidence on that at all? But was the director's interpretation of it available at the time of the pleadings? In other words, you said that 4350 was in effect, and then there was a later interpretation of it. Is that what you said? That's correct. And was that – was that – was that – how was that raised by the pleadings? The pleadings that are at issue before this Court, some of them are third and fourth filed complaints. At the time that all of them were filed, the regulation did exist on the books. Right. And so they are correctly – they are referenced in the complaints. Yes. Yes. Okay. And what else – what else was there from your side interpreting the regulation that was in the books at the time that the – that the judge issued the sua sponte order? I hate to put off the Court's question, but I would like to defer that question to Mr. Rivera. Sure. And just add one more point and see the rest of my time to him. This Court, in addressing whether the complaint fails to state a cause of action, applies a de novo standard. On the face of the complaint, the plaintiffs have failed to allege any fundamental right at issue, which means that the State need only show a legitimate interest to support the existence of Regulation 4350. However – But if the State has to show something, then we're past the pleadings, aren't we? No, we're not, because the pleadings acknowledge on the face of them that there were violations that threatened – of the regulation that threatened the safety and security. It's on the face of the complaint. Well, if I understand it, there was something like 70 violations in the six-year period, and you draw the conclusion that that was a dangerous situation. But if you pare it down, we don't know what years they occurred and whether they would be reoccurring. We don't know all of the nuances of that at all. Well, let me simply point out – So am I right or am I wrong? The numbers are approximate. That's probably approximately correct. But let me point out, Your Honors, that we're talking about sexually violent predators. We're not just talking about robbers. I understand that, but we're talking about people who are civilly committed. And the other part of the question is, did these regulations go – were they putative? In other words, were they wholly unnecessary and wrong? And that – doesn't that have to go back for a fact-finding and analysis based on the evidence, actual evidence, not declarations which made by their side? The court reviews the lower court's decision to dismiss without leave to amend an abuse of discretion standard. But you just told us we review the dismissal de novo. So whether or not it should have been with or without – so let me just ask – I know you want to give some time to your colleagues, so let me just ask a question. I think you can answer yes or no. We should review this case as if you had filed a motion to dismiss the complaints and the judge granted it. Is that right? That's correct. Okay. Okay. I'll save the rest of my time. Thank you, Your Honors. Good morning, Your Honor. Jesse Rivera, appearing on behalf of the State Defendants. Just to answer a brief question that Judge Bright brought up, we have to remember several things. The original regulation that allowed and authorized these individuals to have computers, Internet-capable devices that supposedly weren't supposed to be Internet-capable, occurred in 2006. In 2007, there was a moratorium placed on the purchase of these particular items, because at that point in time and within four to five months, it became very apparent that it was a bad decision to allow these individuals to have these type of devices. Subsequently, in October 26th of 2009 is when the State passed a regulation under 4350, therefore banning the possession and use of Internet-capable devices. That's what we're talking about. And this is why the procedures in this case are of concern to me. On the record that I saw of the preliminary injunction hearing, if the judge had decided and he had given the parties notice that he was going to treat the preliminary injunction hearing under Rule 65 as a disposition on the merits, I think you win. But my difficulty is that we're here looking at a complaint. And the complaint says, not implausibly, there's an entire ban on electronic devices here. I don't think it states a very good First Amendment claim, I must say. But in the punitive area, it says some of this goes beyond what's necessary and we're civil detainees. And you then come up with a preliminary injunction hearing with a bunch of pretty good reasons why you need to do it. But we're restricted to looking at the complaint. Now, I know I'm asking you the procedural question after your colleague sat down. But if we're restricted to looking at the complaint, don't we have to find that it's stated under minimal standards which we apply to pro se complainants? It stated a claim. Short answer is no. Why not? And the reason is, is because... End of the microphone, please. I'm sorry, Your Honor. Speak in the microphone. Very well. I apologize. The short answer is no. And the reason is, is because the complaints outline what had occurred. So if they filed a less fulsome complaint, they would have stated a claim. But because they put your side of the case into it, too, it doesn't state a claim? Well, that's not quite what I'm saying. I think what it indicates is if you're going to look at the complaint in terms of what record we have, then we at least know that there are some facts that they have included, which is fortunate, I think, for us in terms of a motion to dismiss or a 1915e2 type of motion. So we have more information than perhaps what we would normally have. So here we do know that the original regulation was passed in 2006 authorizing this. Then we also know, based on the complaints and in the facts, that a 4350 moratorium occurred in 2007, and then subsequently in 2009, 4350 was passed. So we know that occurred as a result of what's in the complaint. So we're fortunate in that respect. Now, not all pro se complaints are going to have all that information, I will concede. But since we have that information, we can rely on it. When was the complaint filed, the original complaint? When were they? Yeah, when was it filed? Some of them were filed in 2007. Some of them were 2008. One of them, I believe, Mr. Allen, was originally filed in 2006. Subsequently, what we've had is amended complaints over the course of time. Wait a minute. The complaints were filed before the 2009 procedure banning the use of any computer, any personal computer. They were original ones, but not the amended ones. The amended ones were filed in 2010 after there was a screening order that was done by the magistrate judge on February 8, 2010, that dismissed many of the causes of action, allowed the electronic device matter to proceed pending a triage conference. That's procedurally how we proceeded. Therefore, under the triage conference, the court stayed all the other whatever very few items they had, and they were not of real constitutional dimension, I might add, to allow us to discuss the electronic device. And the court dismissed without having any record except what was in the complaint. That's it, isn't it? They did do that. And the court did that sua sponte after they reviewed the preliminary injunction that had been filed. Well, but that's why I asked your co-counsel my question, and that's why I keep asking it. I keep getting different answers. Well, the court, your co-counsel said that we're only to look at the complaint, not what materials were sent in in support of this preliminary injunction. Do you agree? Oh, I do agree. And hopefully I wasn't saying something different. It wasn't my intent. I'm just saying it occurred sequentially. Judge Ferris has a question. Yes. Mr. Rivera. Yes, Your Honor. You feel that this Court's decision should affirm what would be the rationale in your view. There is simply no constitutional basis for sexually violent predators to possess electronic equipment that is capable of Internet capabilities. Quite simply. I just do not see, and I have not seen any court in this district, in any other district, I might add, or in this entire country to say that that is a constitutional right. But that's not the issue. The issue is whether these people are civilly commuted, civilly committed. And the issue, it seems to me, is whether the action taken, not only the regulation, which may well be constitutional, but the action taken there under may be punitive. I'm not saying it is. I'm not saying it isn't. But we don't know whether it's punitive or it's proper. And we know that a civilly committed person is entitled to more privileges than a prisoner. Do you agree with that? Not entirely. And if I may, I understand I have the red light. Go ahead. Let me answer your question. I think we've been getting a little far afield with respect to what our definition is with regards to civil detainees. We have to go back and look at Youngberg, if I may, where they first talk about more we have to treat civil detainees with a little bit general eye. I understand that. And especially in Youngberg, we're talking about somebody who was mentally infirm, could not take care of themselves, could not bathe, could not even feed themselves. I completely understand why the Court did that. But you have to remember, the Court also allowed flexibility in terms of this law. And I'll quote this from Youngberg. The rights afforded civilly detained persons are flexible enough to take into account the circumstances of the detention. We have sexually violent predators here. These men have been convicted of sexual crimes. They did their time. Then the State has determined under 6600 of the Welfare Institutions Code that they're still a danger. They have been found, committed, placed in a hospital. We are entitled to look at that. We know that. So I don't think we can go so far afield just because we see some cases that talk about civil detainees to allow us to do things that perhaps somebody who might be mentally infirm can't. Thank you, Your Honor. A few points to address, Your Honors. First, the appellees point to the Youngberg standard. However, this Court has not used that standard when analyzing substantive due process claims that go to punishment. This Court has firmly followed Bell and examined whether a restriction is excessive or if there's a less harsh alternative available. And therefore, the Youngberg standard is simply not appropriate. That should be reserved for situations that clearly go to medical decisions. This is people wanting to play innocuous devices like Game Boys or do word processing on a disabled laptop computer, Your Honor. Let me ask you about your First Amendment claim. How does this complaint sufficiently allege that this regulation violates your client's constitutional right to speech or treatment? I don't see that in this complaint. I do see in the complaint the issue that Judge Bright's been asking about, the punitive issue. But I don't – where is there a First Amendment claim in any of these complaints? Your Honors, I believe the most accurate place to point to is the State's excerpts of the record. I believe it's page 197, which is Fraser's amended complaint or emergency complaint. And there he did specifically say – I don't have it right in front of me – that this policy is infringing his First Amendment rights for expression. Yeah, but it has to be a plausible claim. You just can't use the words. So tell me in layman's terms how it is that this policy infringes on your client's rights to expression. Absolutely, Your Honor. It is plausible because the very face of Regulation 4350 singles out electronic gaming devices. And because of that, it is plausible to infer that they do not have access to protected speech, which is video games. And they specifically alleged in their pro se filings that they cannot use hospital computers for personal entertainment purposes. And we know under this regulation that their gaming devices, such as Game Boys, have indeed been confiscated from them. So it is not clear that they have an adequate alternative, Your Honors, to play video games. And – There's a constitutional right to play video games? There's a constitutional right to access forms of protected speech, which video games are, just like books and movies. And since these are civil detainees, this Court in Heydrich v. Hunter indicated that even a heightened level of scrutiny may be required. And while even fundamental rights can be restricted by the State, there has to be a good reason. And that reason simply has not been substantiated here because this was dismissed so early, Your Honors. It was dismissed early, but the allegations were made. Isn't that so? The allegations were made, and we believe they could plausibly be developed further to further substantiate their very – their claims that are grounded in this Court's precedent. And if given the chance to go forward through discovery and ascertain whether the incidents are germane to this sweeping regulation and whether they have alternatives to play things such as video games, then they can further substantiate these claims, Your Honors. And I see I'm over time, and I apologize. I want to ask one question. You answered yes or no, or I don't know. Okay. And that is, I know you're from the law school, Southwestern. That's right. If by chance – and I'm not suggesting what we're going to do – part of this complaint goes back for reconsideration and possible testimony. Will the law school still represent the people who are still civilly committed, or can you answer that one way or the other? I can't speak to Southwestern Law School. I'm not sure that they have the resources, but I'll be taking the bar in July, and if I pass, I gladly will, Your Honors. Thank you. Thank you, Your Honors. Best answer to a question or both. In case we're disinvited, let me thank both sides for their very useful briefs and arguments.
judges: Bright, Farris, Hurwitz